IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TINA J. WALKER,<br><br>   Plaintiff,<br><br>vs.<br><br>CITY OF FREMONT, a political subdivision of the State of Nebraska; SCOTT GETZSCHMAN, in his official capacity as mayor and individually; BRIAN NEWTON, in his official capacity as city administrator and individually; and SHANE WIMER, in his official capacity as assistant city administrator and individually,<br><br>   Defendants. | 8:19CV356<br><br>**MEMORANDUM AND ORDER** |

  This matter is before the Court on defendants' motion for partial summary judgment pursuant to Fed. R. Civ. P. 56. Filing No. 41. Also, before the Court is plaintiff's motion to extend time to file amended pleadings. Filing No. 45. Plaintiff filed this action seeking relief for employment related and civil rights claims against these defendants. Plaintiff based this action on allegations that she was discriminated against on the basis of her sex in violation of 42 U.S.C. § 2000e-2 and Neb. Rev. Stat. §48-1004 (Counts I and II) and retaliated against in violation of Title VII and 42 U.S.C. § 2000e-3 and Neb. Rev. Stat. §48-1114(1)(a) and (b) (Counts III and IV). She further alleges violations of the Equal Pay Act (29 U.S.C. § 206(d)(1) et. seq.) (Count V), the First Amendment (42 U.S.C. 1983) (Count VI), Disability Discrimination Alleged Against Defendant Fremont, 42 U.S.C. §§ 12101 et seq. ("ADA") (Count VII), Disability Discrimination Alleged Against Defendant Fremont, Neb. Rev. Stat. §48-1104 ("NFEPA") (Count VIII), Disability

1

Retaliation Alleged Against Defendant Fremont 42 U.S.C. §12203 and Neb. Rev. Stat. §48-1114(1)(a) and (b) (Counts IX and X), Whistleblower Retaliation Alleged Against Defendant Fremont Neb. Rev. Stat. §48-1114(1)(c) (Count XI), Violations of the Family Medical Leave Act Alleged Against All Defendants 29 U.S.C. 2601 et seq. (Count XII Second Amended Complaint, Filing No. 30.

As stated in this Court's previous Memorandum and Order, "[p]laintiff Tina J. Walker (herein "Walker") has been employed by the City of Fremont since July of 2016, most recently as the Library Director. She initially reported to defendant Brian Newton (hereinafter "Newton"), who served the City of Fremont as the City Administrator. She was later supervised by the Assistant City Administrator, defendant Shane Wimer (hereinafter "Wimer"). At all relevant times, defendant Scott Getzschman (hereinafter "Getzschman") was the elected Mayor of the City of Fremont. Walker alleges she was harassed for several months by her supervisor, defendant Newton. In September of 2017, Walker reported to the City Council that Newton had lied to the City Council and violated the City's Union Contract. The next day, Walker alleges she was disparaged, reprimanded, and told by Gertzschman not to speak at City Council meetings unless called upon to do so.

On September 18, 2017, Walker filed a written complaint of gender discrimination and retaliation with the City Attorney against Newton and Getzschman. An outside law firm was brought in to investigate Walker's claims. Walker alleges she began to receive negative written performance evaluations, even though she was verbally told by Wimer that her work was outstanding. On February 20, 2018, Walker's attorney notified the H.R. Director that Walker had retained counsel and would be filing an Equal Employment Opportunity Commission (EEOC) and Nebraska Equal Employment Opportunity

2

Commission (NEOC) complaint, in addition to anticipated litigation. Eight days later, Walker received an updated performance evaluation that was more negative than the original versions. Additionally, she alleges she was only given a cost of living raise while Newton and Wimer received raises substantially higher than what Walker received." Filing No. 16 at 2.

### A. Motion to Extend Time

Plaintiff asks this Court to extend her time to file another Amended Complaint. Plaintiff alleges she was constructively discharged after the filing of this lawsuit. She has since filed this claim with the EEOC. She asks the Court to permit her to amend her claim after her 90 day time limit with the EEOC has run. Defendants oppose this motion. Defendants argue that because there is already a timely filing with the EEOC in this case, plaintiff does not have to amend her complaint. Defendants contend there is no good cause to file an amended complaint as the constructive discharge allegation is no greater than the sweep of the second amended complaint.

The Eighth Circuit has stated that a "plaintiff will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are like or reasonably related to the administrative charges that were timely brought." *Wallace v. Interbake Foods, LLC*, 973 F. Supp. 2d 1067, 1075 (D.S.D. 2013) (citing *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir.1986)); *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 673 (8th Cir. 2006); *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005). "'We do not require that subsequently-filed lawsuits mirror the administrative charges' as long as 'the sweep of any subsequent judicial complaint' is no broader than 'the scope of the EEOC investigation which could reasonably be expected to grow out of the charge' filed in the EEOC complaint." *Wedow*, 442 F.3d at 674 (quoting *Duncan v. Delta Consol. Indus.*,

3

*Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004)). As the Supreme Court stated: "Nothing in [Title VII] suggests it intended to require a layperson, while making this difficult decision, to follow such a two-step process in order to preserve any remedy if he [or she] is constructively discharged." *Green v. Brennan*, 136 S. Ct. 1769, 1778 (2016).

The Court agrees that plaintiff is likely covered under her previous filing with the EEOC in terms of the constructive discharge allegation, assuming it is related to the substance of the previous filing. *Dittemore v. Transit Auth. of the City of Omaha*, No. 8:16-CV-23, 2016 WL 3945154, at *4 (D. Neb. July 19, 2016) (explaining "[t]he scope of a civil suit may be as broad as the scope of the administrative investigation ... but it cannot be broader."). To make the allegations clear to the parties, the Court will allow plaintiff to file a further amend her complaint at this time to include her allegations of constructive discharge. Likewise, if after the EEOC process has expired plaintiff feels as though she needs to further amend, she may so motion the Court.

**B. Motion for Partial Summary Judgment**

**(1) Law**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint*, 736 F.3d 1134, 1136 (8th Cir. 2013). "Summary judgment is not disfavored and is designed for 'every action.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (quoting *Celeotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). In reviewing a motion for summary judgment, the court will view "all evidence and mak[e] all reasonable

4

inferences in the light most favorable to the nonmoving party." *Inechien v. Nichols Aluminum, LLC*, 728 F.3d 816, 819 (8th Cir. 2013). Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Torgerson*, 643 F.3d at 1042; *and see Briscoe v. Cty. of St. Louis, Missouri*, 690 F.3d 690 F.3d 1004, 1011 (8th Cir. 2012) (stating that the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'").

Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Celeotex Corp.*, 477 U.S. at 325 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1986)). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celeotex Corp.*, 477 U.S. at 325. In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)); *see Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (stating "[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly

5

supported motion for summary judgment) (quoting *Anderson*, 477 U.S. at 247-48). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

"Sovereign immunity ... is a jurisdictional threshold matter." *Lors v. Dean*, 746 F.3d 857, 861 (8th Cir.2014) (quoting *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 903 (8th Cir.1999). A waiver of sovereign immunity by a state requires a "clear, unequivocal statement that it wishes to do so." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 800 (8th Cir.2002) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238–40, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)).

**(2) Discussion**

Defendants contend they are entitled to sovereign immunity on counts two, four, eight, ten and eleven of plaintiff's second amended complaint. All of these counts arise under the Nebraska Fair Employment Practice Act ("NFEPA") as codified at Nebraska Revised Statutes sections 48-1101 to 48-1125; Neb. Rev. Stat. § 48-1125. These particular counts are all asserted solely against the City of Fremont. The City of Fremont is a political subdivision of the State of Nebraska. Defendants contend that Nebraska and its political subdivisions have not waived their immunity to suit in federal court under NFEPA, relying on *Knapp v. Ruser*, 145 F. Supp. 3d 846, 855 (D. Neb. 2015)[1]. As stated in *Knapp*:

> Neither of these remedial statutory schemes is sufficiently explicit to affect a waiver of sovereign immunity to suit in federal court. This Court has previously held that Nebraska has not waived immunity to suit in federal court under the NFEPA. *See Schreiber v. Nebraska*, 8:05–cv–537, 2006

---

[1] Nebraska law allows a plaintiff to sue the state for violations of both the NFEPA and Neb.Rev.Stat. § 48–1221 "in the same manner as provided by [Nebraska law] for suits against other employers." Neb.Rev.Stat. §§ 48–1126 and 48–1227.01. For violations of the NFEPA, "[a] complainant who has suffered ... a violation of [the NFEPA] may ... file an action directly in the district court of the county where such alleged violation occurred." Neb.Rev.Stat. § 48–1119(4). For violations of Neb.Rev.Stat. § 48–1221, an "[a]ction may be maintained in any court of competent jurisdiction." Neb.Rev.Stat. § 48–1223(2).

6

WL 488719 (D.Neb. Feb. 28, 2006); *Wright v. Nebraska Health and Human Services System*, 8:04–cv–265, 2005 WL 1331158 (D.Neb. Feb. 14, 2005). Similarly, the language of Neb.Rev.Stat. §§ 48–1223(2) and 48–1227.01, when read in combination, is the precise type of statutory language the Eighth Circuit Court of Appeals has found insufficient to waive a state's sovereign immunity in federal court. See *Faibisch*, 304 F.3d at 800. Therefore, Knapp's fourth, fifth, and seventh claims are barred by sovereign immunity.

*Knapp*, 145 F. Supp. 3d at 855. This Court notes, however, that *Knapp* involves a suit against the Nebraska Board of Regents and against an employee in his official capacity. It is not a case against a city.

Plaintiff, argues defendants, could file this action in the district court of the county where the alleged violation occurred. *Knapp,* 145 F. Supp. 3d at 855 (citing Neb. Rev. Stat. § 48-1119(4)). However, because there is no explicit waiver of sovereign immunity, defendants argue that the City of Fremont cannot be sued in federal court. See *Knapp*, 145 F. Supp. 3d at 855 (citing *Schreiber v. State*, No. 8:05-cv-537, 2006 WL 488719 (D. Neb. Feb. 28, 2006); *Hasty v. Neb. Dep't of Educ.*, No. 4:09CV3196, 2010 WL 1552855, at *5 (D. Neb. Apr. 15, 2010) (collecting cases); *Wright v. Neb. Health & Human Servs. Sys.*, No. 8:04-cv-265, 2005 WL 1331158 (D. Neb. Feb. 14, 2005)). Again, the Court notes that all of these cases deal with the State of Nebraska or one of its agencies. They do not deal with political subdivisions, such as the City of Fremont.

With regard to the NFEPA, defendants again argue that the State's waiver of sovereign immunity only allows complainants to file their actions directly in the district court of the county where the alleged violation of the Act occurred. See Neb. Rev. Stat. § 48-1119(4). The Nebraska Supreme Court has also stated: "unless authorized by statute, neither may a county be sued, for a county is a political subdivision of the state having subordinate powers of sovereignty conferred by the Legislature." *Hoiengs v.*

7

*County of Adams*, 516 N.W.2d 223, 234 (Neb. 1994). However, the Court notes that *Hoiengs* predates the *Chatham County* United States Supreme Court case.

> As stated in *Chatham*:
>
> Because preratification sovereignty is the source of immunity from suit, only States and arms of the State possess immunity from suits authorized by federal law. *See, e.g., id.*, at 740, 119 S.Ct. 2240. Accordingly, sovereign immunity does not extend to counties, *see, e.g., Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401, and n. 19, 99 S.Ct. 1171, 59 L.Ed.2d 401, even when they "exercise a 'slice of state power,'" *id.*, at 401, 99 S.Ct. 1171. The County argues unconvincingly that this Court has recognized a distinct "residual" immunity that permits adoption of a broader test than it applies in the Eleventh Amendment context to determine whether an entity is acting as an arm *190 of the State entitled to immunity. The Court has referenced only the States' " 'residuary and inviolable sovereignty' "that survived the Constitution. *See, e.g., Federal Maritime Comm'n v. South Carolina Ports Authority*, 535 U.S. 743, 751, 122 S.Ct. 1864, 152 L.Ed.2d 962. Because the County may claim immunity neither based upon its identity as a county **1691 nor under an expansive arm-of-the-State test, it is subject to suit unless it was acting as an arm of the State, as delineated by this Court's precedents, in operating the drawbridge.

Northern *Ins. Co. of New York v. Chatham County, Ga.*, 547 U.S. 189, 189–90 (2006).

Plaintiff opposes this motion. Plaintiff contends that the claims from both federal and state statutes are plaintiff's state law claims for sexual harassment and retaliation, disability discrimination and retaliation and whistleblower retaliation under NFEPA. Plaintiff disputes whether the *Knapp* decision even applies in this case. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) ("The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances…but does not extend to counties and similar municipal corporations."); *Frenchman Cambridge Irr. Dist. v. Heineman*, 974 F. Supp. 2d 1264, 1277 (D. Neb. 2013) (Bataillon, Joseph) ("the Eleventh Amendment does not protect political subdivisions that are not acting as the State itself.") *Id.* citing *Jinks v. Richland Cnty.*, 538 U.S. 456, 466

8

(2003). The State of Nebraska or an arm of the State of Nebraska are the only entities that get Eleventh Amendment Immunity. As stated in *Frenchman*:

> The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals. Hess v. Port Auth. Trans–Hudson Corp., 513 U.S. 30, 39, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994); see Alden v. Maine, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state). States and arms of the state possess sovereign immunity from suits. Steadfast Ins. Co. v. Agric. Ins. Co., 507 F.3d 1250, 1252–53 (10th Cir.2007) (finding that Grand River Dam Authority is an arm of the state). A state may, however, waive its immunity. See Lapides v. Bd. of Regents, 535 U.S. 613, 618, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002). "Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction, or else if the State makes a clear declaration that it intends to submit itself to our jurisdiction." College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675–76, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).

Frenchman Cambridge Irr. Dist. v. Heineman, 974 F. Supp. 2d at 1277. "The Eleventh Amendment does not protect political subdivisions that are not acting as the State itself. Only States and state officers acting in their official capacity are immune from suits for damages in federal court-plaintiffs may bring suit for damages against all others, including municipalities and other political subdivisions of a State. Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res., 532 U.S. 598, 609 n. 10, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)." Id. at 1277-78.

The focus, then, becomes whether the entity is an arm of the state. Id. at 1278. The Court must look to the degree of autonomy, its independence, and whether it is a political subdivision. "The more an entity's independence resembles that of a political subdivision, the less likely the entity is an arm of a State. Public Sch. Ret. Sys. of Mo., 640 F.3d at 827. A resemblance to a political subdivision is assessed in terms of operational and political independence from states. Id. at 828–29. The greater the state's

9

ability to appoint an entity's leaders, the more likely that the entity is an arm of the state. Id. at 829." *Id.* at 1278.

Further, NFEPA defines "employer" to include, "[t]he State of Nebraska, governmental agencies, and political subdivisions…" Neb. Rev. Stat. § 48-1102(2). Further, the Court agrees with the plaintiff that this Court has original jurisdiction over plaintiff's claims arising under federal law and pendent claim jurisdiction over the state law claims. 28 U.S.C. Section 1331; 28 U.S.C. §1367(a). In addition, the Eleventh Amendment does not protect political subdivisions that are not acting as the State itself. *Id.* citing *Jinks v. Richland Cnty.*, 538 U.S. 456, 466 (2003); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. at 280. Unless a political subdivision of a state is simply "the arm or alter ego of the state," it may sue or be sued pursuant to the same rules as any other corporation." *Id.* citing *Gilliam v. City of Omaha*, 524 F.2d 1013, 1015 (8th Cir.1975). *See also Williams v. Cty. of Scotts Bluff*, No. 7:05CV5018, 2005 WL 3159661, at *3 (D. Neb. Nov. 28, 2005) citing *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979). Finally, the Court notes that defendants cite no case that is on all fours and is specifically supportive of their arguments.

The Court concludes that the City of Fremont is not immune from suit. First, both parties agree that the City of Fremont is a political subdivision. Filing No. 30 ¶ 2; Filing No. 31, Answer and Affirmative Defenses, ¶ 2. *See also* Neb. Rev. Stat. §§16-101; 16-201; and 13-903. Second, the City has elected officials who are decision makers; the City can sue and be sued; and the City is autonomous in its leadership choices and decision making. Third, *Knapp* specifically dealt with the University of Nebraska Board of Regents and an employee in his official capacity. These two defendants were clearly

10

not political subdivisions. In fact, the University of Nebraska Board of Regents is most likely an arm of the State of Nebraska. There was no discussion in *Knapp* as to the issue of "an arm of the state" or as to political subdivisions. The Court agrees that a political subdivision, in this case the City of Fremont, is not an arm of the state of Nebraska. Consequently, the Court shall deny defendant's motion to dismiss this motion. Accordingly, the Court finds that counts two, four, eight, ten and eleven in the Second Amended Complaint, shall proceed.

**THEREFORE, IT IS ORDERED THAT:**

1. Plaintiff's motion to file a third amended complaint, Filing No. 45, is granted as set forth herein. Plaintiff shall have 30 days from the date of this Memorandum and Order to file her amended complaint.
2. Defendants' motion for partial summary judgment, Filing No. 41, is denied.

Dated this 4th day of February, 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge